546

Circuit Court of Appeals, Seventh Circuit.
May 20, 1939.

Rehearing Denied June 30, 1939.

Donald N. Clausen, Herbert W. Hirsh, and Norman A. Miller, all of Chicago, Ill., for appellants.

Harold M. Wilkie, of Madison, Wis., for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Defendants appeal from judgments entered against them in a suit prosecuted by plaintiffs upon separate policies of fire insurance issued by defendants. The defense relied upon in the trial was surrender and cancellation of the policies by mutual agreement prior to the time that loss was sustained. The District Court denied defendants' motion for a directed verdict and also their motion for judgment notwithstanding the verdict of the jury. Defendants contend that the foregoing rulings constituted error.

The following facts are disclosed by the evidence. The individual plaintiff, Smith, was the owner of a building in which the corporation plaintiff, Perfection Furniture Company, had its plant. On March 21, 1934, the defendants, through their agent, John E. Hoff & Co., issued separate policies of insurance, identical in form, insuring Smith and the Perfection Furniture Company for a term of one year against loss or damage by fire. The policies were obtained for the plaintiffs through Hoff & Co., the agent of defendants, by an insurance broker, W. F. Colvett, who, according to Smith's testimony, had placed insurance for plaintiffs two or three times during a period of seven or eight years. The Hoff Agency delivered the policies to the broker who made out a bill for them and delivered them to Smith. The broker was not in the employ of the Hoff Agency but placed a part of the business which he solicited with the Hoff Agency in exchange for desk space and telephone service. The premium on the two policies was charged to the broker on the books of the Hoff Agency with which he had an account. Smith paid the broker $50 on account of the premiums. About three weeks thereafter the Hoff Agency was requested by the two insurance companies to cancel the two policies. At the request of the Hoff Agen-

cy, Colvett, the broker, stopped at Smith's place of business to pick up the policies. Colvett testified that when he went to get the policies he "went because of direction or request which had been given (him) by Mr. Peters." Smith delivered the policies to Colvett who, in turn, delivered them to Hoff's office where they were marked "cancel flat 4/16/34."

The testimony of Colvett and Smith respecting the conduct and conversation of Colvett and Smith at the time Colvett picked up the policies clearly justifies the inference that Colvett represented to Smith that the companies were not insisting upon an immediate cancellation and that the policies would not be cancelled until Colvett should place the insurance with another company. Colvett testified as follows: "Well, I don't think he (Smith) understood they were to be cancelled the same day, or until a few days, or until I had time to replace it." Smith testified that he told Colvett that "he could· cancel them when he had the new insurance;" and further that he did not at that time, or at any other time, tell Colvett that he could cancel the policies without first getting new insurance. Smith also testified that he told Colvett that he might as well take the policies with him at that time and that he (Smith) did not want to cause Colvett an extra trip. Smith testified, in part, as follows: "When Colvett came there in April, he said the companies would like to get off the risk. I says, 'Well, how soon?' I says, 'Well take the policies.' He says, 'It is no hurry. You can keep it for a week or two. It is not urgent cancellation because if it was urgent cancellation if we would have it too long, then the companies would write a written notice along about two weeks or so.' I says, 'Well, you may as well take these policies with you now. I don't want to cause you an extra trip coming down here."

The foregoing testimony is of special significance in reviewing the understanding both of Colvett and Smith in view of the fact that the policy authorizes cancellation at any time at the request of the insured "or by the company by giving five days notice of such cancellation."

The only fair inference from the foregoing testimony is that the insured delivered the policies to Colvett upon the condition, and with the understanding, that the policies would not be cancelled until new insurance had been obtained and that, in any event, the policies would not be cancelled without further notice from the companies. New insurance was not procured and no further communication was received by the insured prior to loss either in respect to new insurance or cancellation of the policies.

Defendants-appellants sum up their contention on appeal as follows: "We believe that under the facts disclosed by this record, the rule recognized in Illinois, that delivery of possession of the policies of insurance by the insured to a broker, vests him with implied authority to surrender such policies for cancellation, and that when the policies of insurance in the case at bar were surrendered without condition or qualification, by Colvett, to the defendants, who in good faith cancelled the policies flat, that a valid cancellation by mutual agreement was accomplished, and that the defendants were not liable for the loss occurring subsequent to the date of such cancellation."

On the other hand plaintiffs' position is that Colvett was not an agent of the plaintiffs, either in fact or as a matter of law, and that there was ample evidence to sustain a finding by the jury that plaintiffs did not unconditionally surrender the policies and that there was no cancellation by mutual agreement of the parties prior to loss.

As a basis for our discussion we must assume that as between the insured and Colvett, Colvett, in fact, was not authorized to cancel the policies, except upon the condition that he procure substitute insurance for Smith. Consequently, the cancellation of the policies by the companies was ineffective unless, as between defendants and Smith, Colvett, as a matter of law, must be treated as the agent of Smith with unqualified authority to cancel the policy. Defendants undoubtedly are correct in the statement that the general rule in Illinois is that an insurance broker is regarded as the agent of the insured. This rule is recognized in other jurisdictions, but there is an equally general rule that the authority of an agent or broker specially employed to procure insurance is ended when the policy is procured and delivered to the insured, and, consequently, that such agent or broker has no power to consent to a cancellation after the policy has been delivered. The following statement seems to represent the law generally throughout the various states, including Illinois: "It is well settled that the authority of an agent or broker specially employed to procure insurance for his principal terminates with the procurement and delivery of the policy,

548

since it cannot, in reason, be held to continue after the purpose for which the agency was created has been accomplished and the policy delivered to the principal; also, that an agent to make a contract has no power to discharge it, and that, in order for him to possess such power, it must arise from some actual or apparent authority superadded to that arising from the mere fact of a special employment to procure a policy."[1]

In Globe & Rutgers Fire Ins. Co. v. Emil Willbrandt Surgical Mfg. Co.[2] the court recognized the foregoing rule in the following statement: "As we understand the law, these brokers were the agents of appellant for the purpose of effecting this insurance, but when that was accomplished and the policy delivered to appellee, their agency ceased. There is nothing in the policy, and we think nothing anywhere in the evidence when it is all considered and weighed together, to warrant the conclusion that they were appellee's general agents with respect to this insurance."

In Hartford Fire Ins. Co. v. Tewes[3] the plaintiff had applied to a broker for insurance on certain property and the broker obtained the policy from his correspondent who delivered the policy to the plaintiff. The broker was then asked by the correspondent to return the policy for cancellation. In respect to the contention that the request to the broker to return the policy constituted notice to the insured, the court commented as follows: "As Vandeventer's agency extended only to the procurement of the insurance, and that had been completed long before June 30th, notice to him on June 30th of an intention to cancel the policy was not notice to appellee." The Illinois Court cited in support of the foregoing statement the United States Court decision of Grace v. American Central Ins. Co.[4] In the latter case the Supreme Court used the following language: "As the uncontradicted evidence was that Anthony's agency or employment extended only to the procurement of the insurance, the jury should have been instructed that his agency ceased when the policy was executed, and that notice to him, subsequently, of its termination was ineffectual to work a recission of the contract."

Defendants rely heavily upon the related rule, as announced in Fowler Cycle Works v. Western Ins. Co.,[5] that "generally speaking, possession of a policy by an insurance broker confers upon him implied authority to procure its cancellation." But the court pointed out in its opinion that the general rule did not apply to the case before it in view of the fact that at the time the request for cancellation was made the insurance company was informed that the person making the request had ceased to be the agent of the party owning the policy. The court stated that "by this information the implication of authority arising from the mere physical possession of the policy was destroyed."

■■ In the instant case there is no substantial evidence that the broker had any general authority to handle insurance matters for the insured. It is true that the broker had procured policies for the insured two or three times, but there is also direct testimony by the insured that the broker had no general authority to represent him in insurance matters and that Smith had in fact placed insurance through other brokers or insurance agents. On the facts Colvett was an agent with authority only to procure the policies in question. Consequently, the usual rule applies that the broker's authority terminated with the delivery of the policies to the insured. The possession of the policies by the broker at the time of their delivery to the defendants cannot be the basis of any presumption of continued general authority to represent the insured since the defendants knew that the broker acquired possession as a result of their "direction or request" to obtain the policies for cancellation. In short, when defendants informed the broker of their intention to cancel the policies they were bound to know, in the absence of actual knowledge to the contrary, which they did not have, that the broker's authority to represent the insured was ended.

We are of the opinion that the decisions of the Illinois Appellate Court sustain the conclusion that Colvett's authority to represent the insured in respect to the policies ended when the policies were delivered to the insured.

[1] Couch, Cyclopedia of Insurance Law, Sec. 473, p. 1340. See also Kinney v. Rochester Insurance Co., 141 Ill.App. 543.

[2] 128 Ill.App. 262.

[3] 132 Ill.App. 321.

[4] 109 U.S. 278, 3 S.Ct. 207, 209, 27 L. Ed. 932.

[5] 111 Ill.App. 631.

■ The cancellation transaction, which was initiated by the defendants, was a new and independent transaction as between the defendant companies and the insured; and the evidence was sufficient to sustain a finding by the jury that in such transaction Colvett represented the defendants. When defendants initiated the cancellation transaction they had an unqualified right under the insurance contract to cancel upon five days notice. They chose to. negotiate for cancellation by mutual agreement and the evidence is sufficient to support a finding by the jury that there was no mutual agreement to cancel. In view of the testimony of Smith and Colvett it cannot be said that Smith authorized Colvett to consent to a cancellation except upon the condition that new insurance be procured by Colvett. Such condition was not satisfied and Colvett's delivery of the policies to the agent of defendants without revealing the conditions imposed by Smith did not add legal efficacy to the act of cancellation by defendants' agent.

We conclude that the trial court did not err in overruling either defendants' motion for a directed verdict or their motion for judgment in their favor notwithstanding the verdict of the jury.

Judgment of the District Court is affirmed.