**GRANITE STATE FIRE INS. CO. v. MITTON et al.**

Civ. No. 2953.

United States District Court
D. Colorado.

June 27, 1951.

Pershing, Bosworth, Dick & Dawson, Winston S. Howard and Arthur K. Underwood, Jr., all of Denver, Colo., for plaintiff.

L. A. Hellerstein and Wayne D. Calderwood, Denver, Colo., for defendants.

WALLACE, District Judge.

This is an action instituted by the Granite State Fire Insurance Company, in the United States District Court for the District of Colorado, to recover from its agent the sum of $11,612.23, paid to its assured under a contract of insurance. Plaintiff is a corporation organized under the laws of the State of New Hampshire. Defendant,

708

Finance Insurance Agency, is a corporation organized under the laws of the State of Wyoming, and defendant, C. E. Mitton, is a citizen of the State of Colorado and President of the Finance Insurance Agency. Judgment for the plaintiff in the amount prayed for of $11,612.23.

Plaintiff alleges that the defendants were the agents of the plaintiff in the transactions governing liability under the policy, and that due to the negligence and breach of duty of the defendants in failing to follow instructions of the plaintiff and obtain a release of certain of the provisions of the policy, plaintiff was required to pay to the assured the sum set out above. Wherefore, plaintiff prays judgment in that amount.

Early in December, 1947, D. G. Gordon, of the contracting firm of Tunnel Constructors, informed Mitton that he needed some insurance on certain heavy equipment that he was then using on a water works construction project. Mitton inquired of several insurance companies, but was unable to obtain the desired coverage. Finally, he decided to call upon Charles H. Jones, who was then state and general agent for a large number of insurance firms. On January 15, 1948, Mitton called Jones on the telephone and informed him of the insurance he wanted. Among the risks to be covered were those of landslide and flood. The parties arrived at a satisfactory rate and Jones informed Mitton that the insurance would be in the Granite State Company. At this time, Mitton was not an agent for Granite State, but he was an agent for the Utah Home Fire Insurance Company, for which Jones was also state agent. However, Utah Home was not willing to handle the risk, and therefore, the policy was not placed with it. A binder upon Granite State was given on January 16, 1948, and a policy was issued effective as of that date. Under the terms of the policy the risks of landslide and flood were fully covered.

During the first week in February, 1948, Jones had a conversation with Mitton in which it was agreed that Mitton should be appointed agent for Granite State since it was anticipated that Mitton would write additional insurance upon this same ma-

chinery in the future, and Granite State was one of the few companies willing to write a policy upon equipment of such a nature. Jones thereupon accomplished certain forms required by the Colorado Statutes and sent them to the Commissioner of Insurance who issued a license to Mitton as agent for Granite State. The license was made effective as of March 1, 1948, for a term of one year.

Shortly thereafter, Granite State informed Jones that it was not willing to carry the risks of landslide and flood and directed Jones to have those risks removed from the policy. Jones thereupon called Mitton and told him that these risks would have to be removed or Granite State would cancel the policy. There is considerable conflict of testimony as to whether Jones referred to both landslide and flood, or whether he only mentioned the landslide risk. However, that is not decisive of the issues in this case for on February 9, 1948, Jones wrote a letter to Mitton directing him to obtain endorsements releasing both of these risks. This letter was received by Mitton who, at that time, noted that flood was also to be removed. Mitton was requested a number of times to accomplish the endorsements and so relieve the plaintiff of the flood risk. However, he failed to do so, continuously giving Jones some new reason why he could not obtain the assured's signature, but meanwhile, assuring Jones that he would acquire the endorsements as soon as possible. Although Mitton approached the assured upon the removal of the landslide risk, he failed to make any reference whatsoever to the removal of the flood risk. In so doing, Mitton failed to exercise reasonable diligence in seeking the endorsements and, in fact, there was strong evidence that he did not desire to obtain the endorsement for fear of offending a potentially advantageous business associate. On May 30, 1948, Tunnel Constructors suffered a loss of the equipment insured, due to flood, and Granite State, still being bound on the flood risk, was required to pay the claim against it.

Approximately one week after the loss occurred, Mitton wrote to Jones, stating that he regretted his failure to obtain the

endorsement before loss occurred, but that he would proceed to obtain the release at once. Shortly thereafter, Mitton did obtain the release as had been originally requested of him. Jones then called upon Mitton and removed from his files the license authorizing Mitton as an agent of Granite State. This license was subsequently cancelled.

The defendants deny the existence of any agency relation with the plaintiff or any breach of duty thereunder, and affirmatively allege that they were acting as insurance brokers throughout the entire transaction and were, therefore, the agents of the insured. Defendants further allege that the license issued by the State of Colorado was defective, and that any loss suffered by the plaintiff was due to the negligence and procrastination of the plaintiff's general agent in not cancelling the policy before the loss occurred.

■ An insurance broker is one engaged in the writing of insurance who is not attached to any particular company, but procures the business and then places it wherever he is able. Generally, the broker is hired by the insured and is, therefore, his agent and not the agent of the insurer. Equity Mut. Ins. Co. v. General Casualty Co. of America, 10 Cir., 139 F.2d 723; Smith v. Firemen's Insurance Co., 7 Cir., 104 F.2d 546; International Paper Co. v. General Fire Ins. Co., 2 Cir., 263 F. 363; Eagle Star & British Dominions v. Tadlock, D.C., 22 F.Supp. 545; American Casualty Co. v. Ricas, 179 Md. 627, 22 A.2d 484. However, once the broker has secured the requested policy and it has been accepted by the insured, his relation as agent of the insured terminates. Northwest Underwriters, Inc., v. Hamilton, 8 Cir., 151 F.2d 389; Hanley v. Marsh & McLennan—J. B. F. Davis & Son, 46 Cal.App.2d 787, 117 P.2d 69. Nor will the fact that a broker is the agent of the insured prevent him from becoming the agent of the insurer. International Paper Co. v. General Fire Insurance Co., supra; Lauhoff v. Automobile Insurance Co. of Hartford, Conn., D.C., 56 F.Supp. 493; Gilbert v. Malan, 231 Mo.App.

469, 100 S.W.2d 606; McCabe v. Hartford Accident & Indemnity Co., 90 N.H. 80, 4 A.2d 661. Agency is ultimately a question of the intention of the parties, as evidenced by their acts, and is not dependant upon what the particular person in question is called. Tri-City Transport Co. v. Bituminous Casualty Corp., 311 Ill.App. 610, 37 N. E.2d 441; American Casualty Co. v. Ricas, supra; 2 Am.Jur., § 24, p. 26. Even in the absence of an express agreement that an agency relation is to be created, such a relation may be inferred from the acts of the parties. In the Restatement of Agency, 15, at page 51, it is stated: "Thus if the principal requests another to act for him with respect to a matter, and indicates that the other is to act without further communication and the other consents so to act, the relationship of principal and agent exists."

Jones directed Mitton to obtain the endorsements, and Mitton, although constantly assuring Jones that he was doing his best, failed to acquire these releases. Actually, there is nothing to indicate that Mitton *ever* attempted to release the flood coverage. From the fact of his agreement to become the agent for Granite State, and his assurances to Jones that he was attempting to obtain the endorsements, this court will infer that Mitton was acting as the agent of the plaintiff. Further, the request of the insurer that a license be issued upon the presentation of forms furnished by the Insurance Commissioner is prima facie evidence of the existence of the agency relation. McDonald v. Milwaukee Mechanics' Ins. Co., 7 Cir., 167 F.2d 276.

■ Defendant contends that the license issued by the State of Colorado was legally deficient, and could not constitute the defendant the legal agent of the plaintiff. We need not decide the legality of the license issued, for the Statutes of Colorado dispense with that necessity. Chapter 87, section 19, par. 6 of the Colorado Statutes of 1935 states: "An agent must have a license from the commissioner for each and every company for which business is solicited; provided, however, that a duly licensed agent placing a risk or policy which his company or companies for any reason

cannot accept, in another company doing the same kind of insurance business, shall not * * * be required to have an agent's license for such other company."

It is not denied that Mitton possessed a license as agent for the Utah Home Fire Insurance Co., or that the Utah Home Co. declined to accept the risk. Furthermore, statutes regarding licensing and defining an agent are not intended to change or exclude the general laws of agency. They do not destroy the power of the courts to infer an agency relation from the conduct of the parties. Continental Casualty Co. v. Erion, 186 Ark. 1122, 57 S.W.2d 1025; American Bankers' Ins. Co. v. Lee, 161 Miss. 85, 134 So. 836.

Defendant further contends that Jones should have cancelled the policy prior to the time that the loss occurred, and that the injury sustained by the plaintiff results from such failure on the part of Jones. There are several reasons why this defense must fail. An agent is the servant of his principal; he must carry out the instruction of his principal faithfully and with reasonable diligence. Nor may he substitute his judgment for that of his principal. If the agent fails to exercise reasonable diligence in carrying out such instructions, his neglect will render him liable for any damages proximately resulting to his principal therefrom. Washington v. Mechanics & Traders Ins. Co., 174 Okl. 478, 50 P.2d 621; St. Paul Fire & Marine Ins. Co. v. Bigger, 102 Kan. 53, 169 P. 213. The fact that Jones had authority to cancel the policy is not a defense that may be raised in this action. It is no defense to show that the state agent who directed Mitton to perform these acts also possessed the same authority, or even authority to cancel the policy. The wrong rests solely upon the defendant. Westchester Fire Ins. Co. v. Bollin, 106 S.C. 45, 90 S.E. 327.

Under the facts, it is the determination of this court that Mitton was the agent of the plaintiff; that Mitton failed to perform, with reasonable diligence, the instructions received from his principal;

that the plaintiff suffered damages proximately resulting from that neglect, and; that the defendant is liable therefor.

Counsel are directed to submit a journal entry in conformity with this opinion within ten days from this date.