152 So.2d 577 (1963)
Mrs. Vera A. MATHEWS et al., Plaintiffs-Appellants,
v.
MARQUETTE CASUALTY COMPANY et al., Defendants-Appellees,
Marquette Casualty Company, Third-Party Plaintiff-Appellant,
GIBSON INSURANCE AGENCY, Inc., C. C. Gibson and Michigan-Millers Mutual Insurance Company, Defendants-Appellees.
No. 9917.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1963.
Rehearing Denied April 25, 1963.
Certiorari Refused June 14, 1963.
*578 Booth, Lockard, Jack, Pleasant & LeSage, Cook, Clark, Egan, Yancey & King, Shreveport for third-party appellant.
Mayer & Smith, Van W. Davis, Cook, Clark, Egan, Yancey & King, Shreveport, for appellees.
Before GLADNEY, AYRES & BOLIN, JJ.
GLADNEY, Judge.
Mrs. Vera A. Mathews and Millard G. Mathews, plaintiffs herein, seek to recover for personal injuries and property damage occasioned by a motor vehicle collision which occurred May 20, 1960, in Minden, Louisiana, at the intersection of South Broadway Street and Sibley Road. Named as defendants are Marquette Casualty Company, Gibson Insurance Agency, Inc., C. G. Gibson and Charles W. Frazier. Motors Insurance Corporation, collision insurer of Millard G. Mathews, intervened. Following trial on the merits, Judgment was rendered by the trial court, holding that liability had not been established as to the named defendants, and accordingly, the demands of plaintiffs were dismissed, as were those of the intervenor. Appeals have been lodged in this court by Mrs. Vera A. Mathews and Millard G. Mathews, and likewise by the Marquette Casualty Company, whose third party petition was rejected in the trial court.
The facts relating to the questions of liability resulting from the automobile collision are not in conflict. At the time of the accident Mrs. Vera A. Mathews was proceeding easterly on South Broadway Street, a superior thoroughfare, driving a 1960 Goliath automobile, owned by her son, Millard G. Mathews. South Broadway Street is an avenue with four lanes for traffic, divided by a wide neutral ground. Mrs. Mathews was driving at a moderate rate of speed in the right lane of travel as she came to the intersection of Sibley Road. As she entered the intersection a Mercury automobile owned by Dorothy McIntyre and driven with the owner's consent, by her fifteen year old niece, which was traveling south on Sibley Road, also came into the intersection. A collision occurred under circumstances which clearly indicate that Judy McIntyre was guilty of negligence by entering the intersection either without stopping in obedience to stop signs, or at a time when it was unsafe. The trial court concluded that there was no doubt that the negligence of Judy McIntyre was the sole proximate cause of the accident. Such holding is not questioned on the appeal.
Marquette Casualty Company was named defendant as the insurer of Dorothy McIntyre. A policy had been issued by Marquette *579 on a Buick automobile that had been owned by Miss McIntyre for several years, which policy contained a provision for coverage of after acquired automobiles upon proper notice being given to the insurer. This policy had been solicited by Charles W. Frazier, and issued through the Gibson Insurance Agency, Inc. As shown in more detail by the facts hereinafter set forth, Miss McIntyre on February 27, 1960, purchased a Mercury automobile and within the provisions of her original liability policy, on February 11, 1960, gave the necessary information relating to the acquisition and description of said automobile to Frazier, who computed the premium which permitted an allowance for twenty-five per cent reduction for second car coverage with the same company. She paid Frazier the additional premium by check, which he receipted. Frazier testified he transmitted through mail a letter properly addressed and stamped to Gibson Insurance Agency, Inc., and that it was not returned as undelivered. Marquette and the Gibson Agency take the position that Dorothy McIntyre failed to give proper notice to the Gibson Insurance Agency, Inc. and to Marquette as required by the policy.
Written evidence of supplementary insurance affecting the Mercury automobile was never issued by the Gibson Insurance Agency, Inc. nor Marquette Casualty Company. Marquette Casualty Company, pleading alternatively, has filed a third party petition, naming as third party defendants, Charles W. Frazier, Gibson Insurance Agency, Inc., C. G. Gibson, and Michigan-Millers Mutual Insurance Company, the latter having issued to Gibson and the Gibson agency a policy of indemnity insurance to protect them against errors or omissions committed in the conduct of their insurance business.
A full statement of facts appears necessary to present the several defenses urged by the parties defendant.
Charles W. Frazier was a licensed insurance agent under the laws of Louisiana. Prior to 1959 he was actively engaged in the insurance business in Minden, doing business as Charles W. Frazier Insurance Agency. In that year he became ill and was admitted to a hospital in Shreveport, Louisiana. During his confinement the Norfolk and Denham Mutual Insurance Company took over his agency on account of an indebtedness of some $16,000.00 to that company. When Frazier came out of the hospital in September, 1959, and found his business had been taken over, he contacted C. G. Gibson, principal stockholder and manager of Gibson Insurance Agency in Bossier City, Louisiana. Frazier and Gibson reached an oral agreement, the exact nature of which is seriously disputed on this appeal.
Frazier testified that he was employed as a solicitor for Gibson's agency; that he was to solicit insurance, other than life insurance, for no one else; that he would receive a certain portion of the commissions on the policies solicited; that he was to aid in the event of a premium collection problem or other details relating to the policies solicited, and that he was to report any claims that arose under these policies to the adjusters. Frazier stated that although he was not specially licensed as a solicitor for the Gibson agency, it was understood that they would operate with Frazier's license, which was still in effect, and when the license came up for renewal Gibson would cause Frazier to be licensed as a solicitor for his agency. Frazier further testified it was his understanding that the solicited prospective policyholders would be covered as soon as he obtained the application and gave notice of the new coverage to the Gibson agency.
Gibson testified Frazier did not tell him he no longer had an agency in Minden; that Frazier told him the company he had been placing automobile insurance with had withdrawn from his agency; that Frazier inquired whether Gibson would place automobile policies with one of his insurance companies; that he, Gibson, agreed to place such policies under certain conditions; that *580 Frazier was to handle all collections and send them to Gibson; that Frazier would handle certain other details pertaining to the solicited policies to save Gibson the trouble of going to Minden; and that Gibson would place the insurance at his discretion.
The record reveals that Frazier was a licensed agent for Bankers Life Insurance Company and that he solicited life insurance for that company after his agreement with Gibson. Frazier testified, however, that after that agreement in September, 1959, he solicited automobile and fire insurance only for the Gibson agency. About two weeks after Gibson and Frazier had made their arrangement, an agent of the Norfolk and Denham Mutual Insurance Company telephoned Gibson and informed him Frazier was no longer an agent of that company and that his financial condition was poor. Although Gibson may not have known Frazier no longer had his own insurance agency at the time of his initial agreement with Frazier, we think the record indicates he was aware of that fact after his communication with Norfolk and Denham. After this date Gibson began sending the policies directly to the policyholders. Prospective policy holders solicited by Frazier would receive a copy of the policy from the Gibson Agency along with a letter stating that they would receive the original policy as soon as Gibson received the premium. A thirty-day grace period was allowed and during this time the prospective policyholders were covered. If the premium was not received within thirty days, the policy would be canceled.
Prior to 1959, while he was operating his agency, Frazier had solicited insurance policies from Miss Dorothy McIntyre, which were issued by the Norfolk and Denham Mutual Insurance Company. In October, 1959, Miss McIntyre contacted Frazier and advised him she wanted an insurance policy covering her Buick automobile. Frazier computed the premium and Miss McIntyre made out a check dated October 19, 1959, payable to Frazier for the premium payment on this policy. Frazier sent Miss McIntyre's application, together with the check, to the Gibson agency. A "family combination automobile policy", describing the Buick automobile was issued to Miss McIntyre by the Gibson Insurance Agency, Inc., naming Marquette Casualty Company as insurer. This policy was sent to Frazier by the Gibson agency for delivery to Miss McIntyre.
In November, 1959, Miss McIntyre again contacted Frazier in regard to a policy of fire insurance she desired. Frazier calculated the premium and she paid him by check as she had done previously. Frazier submitted her application and Gibson mailed her directly a fire insurance policy covering her household goods and personal property and naming Marquette Casualty Company as insurer. In this instance, however, Frazier did not remit the premium to the Gibson agency because he felt the agency owed him commissions on policies he had solicited. Along with the fire insurance policy mailed to Miss McIntyre, the Gibson agency sent a letter thanking her for the business and requesting her to make her checks payable to the Gibson Insurance Agency, Inc. and Frazier. Gibson testified he never received the premium payment for this policy but that he did not cancel the policy.
On January 27, 1960, Miss McIntyre purchased the 1953 Mercury involved in the collision which resulted in this suit. On February 11th she contacted Frazier about insurance for this car. On that date he came to her place of business, discussed the coverage and told her she would get a twenty-five per cent discount for insuring a second automobile with the same company. Frazier computed the premium and Miss McIntyre made out a check in that amount, payable to Frazier. Frazier gave her a receipt for this payment. Later that day he gave her a copy of a letter addressed to Gibson Insurance Agency, Inc. and dated February 11, 1960, in which Frazier requested the Gibson agency to extend the coverage of Miss McIntyre's policy to the *581 Mercury. Frazier also stated he had collected the premium from Miss McIntyre and that he was holding it as a credit on the amount he believed the Gibson agency owed him for commissions. Frazier testified he mailed this letter to the Gibson agency. Gibson and his secretary testified they received neither the premium nor the letter.
No policy on the Mercury or endorsement on the Buick policy was ever issued and no further request therefor was made by Miss McIntyre or Frazier prior to the collision.
The first serious issue presented on appeal is whether the coverage of Miss McIntyre's liability policy with Marquette Casualty Company extended to the Mercury involved in the collision without notice to the insurer.
Condition (2) of Miss McIntyre's policy on the Buick, reads:
"* * * If the named insured acquires ownership of an additional private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company within thirty days following the date of its delivery. Any premium adjustment necessary shall be made as of the date of such change or acquisition in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof."
Attached to this policy is the following amendment of the definition of "owned automobile":
"It is agreed:
"(1) That the definition of `owned automobile' is amended to read:
`Owned Automobile' means
"(a) a private passenger, farm or utility automobile described in the policy,
"(b) a trailer owned by the named insured, provided with respect to Part III it is described in the policy,
"(c) a private passenger, farm or utility automobile ownership of any of which is acquired by the named insured during the policy period, provided
"(1) it replaces a described automobile, or
"(2) the company insures all private passenger automobiles * * * owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date, * * *".
The clear import of this language is that an additional automobile of the insured, under circumstances described in the policy, is automatically covered until thirty days following the date of its delivery, but that such coverage ceases at the end of that time if the insured fails to give the required notice to the insurer. See: Collard v. Globe Indemnity Co., La.App., 50 So.2d 838 (1st Cir. 1951). The automatic coverage of Dorothy McIntyre's Mercury ceased thirty days after the date of its delivery to her if she did not give notice to the insurer within that period.
The trial court found actual notice was given by Miss McIntyre to Frazier of the acquisition of the Mercury but this did not reach Gibson, Gibson Insurance Agency, Inc., or Marquette Casualty Company. The record reveals no proof of the receipt of this notice by the Gibson agency and we must concur in the lower court's determination of this fact.
The question which next arises is whether Frazier was authorized as a representative of the Gibson Insurance Agency, Inc. to bind it and Marquette Casualty Company upon the notice given to him by Dorothy McIntyre of the acquisition of the Mercury automobile. The Louisiana Insurance *582 Code, LSA-R.S. 22:1161 et seq. defines and prescribes the duties of an insurance agent, broker and solicitor. Section 1161 indicates that an agent is one who has authority to solicit, negotiate and effect contracts of insurance for an insurer lawfully authorized to transact business in this state. The provisions of this section, as we understand it, clearly authorize an individual licensed to act as an insurance agent to solicit insurance and, as we construe this and sections 1162 and 1163, of the Code, a person so authorized need not have a special license to act as a broker or solicitor of insurance as therein defined. Sections 1162 and 1163 provide:
"An insurance broker is hereby defined to be an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent."
"An insurance solicitor is hereby defined to be an individual, authorized by a duly licensed insurance agent or broker to solicit contracts of insurance solely on behalf of such agent or broker. * * *"
These statutes do not exclude other insurance relationships. That is, these regulatory insurance statutes do not prevent the courts from finding that an agency relationship exists in fact, outside the scope of the statutes. As was said in Granite State Fire Insurance Company v. Mitton, D.C.Colo, 98 F.Supp. 706, 710 (1951):
"* * * statutes regarding licensing and defining an agent are not intended to change or exclude the general laws of agency. They do not destroy the power of the courts to infer an agency relation from the conduct of the parties. Continental Casualty Co. v. Erion, 186 Ark. 1122, 57 S.W.2d 1025; American Bankers' Ins. Co. v. Lee, 161 Miss. 85, 134 So. 836."
See also: St. Louis Fire & Marine Ins. Co. v. Witney, D.C.Pa., 96 F.Supp. 555, 563 (1951); Jones v. Protection Mut. Fire Ins. Co. of Cambria County, D.C.Pa., 95 F. Supp. 589, 591 (1951).
In Couch on Insurance 2d, Vol. 3, § 26:25, the following summary appears:
"In the absence of conflicting statutory or charter restrictions, an agency for an insurance company may be created by implication, it being unnecessary to show that authority was conferred by resolution of a board of directors or other authorized body. Thus, if one purporting to act as agent receives an application, accepts the premium, secures and delivers the policy, and does everything necessary to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer.
"An implication of authority arises from the fact that the insurance company has furnished an agent with policy forms, and by the insurer's act in sending a policy to a person for delivery to the insured.
"An agency may be implied from recognition or acquiescence of the insurer as to acts previously done in its behalf, especially if similar acts repeatedly have been permitted. An insurance company by the repeated acceptance of applications taken by the agent of another company, placing his name on the policies issued and on identification cards, makes him its agent. Where a broker holds himself out as a general agent, solicits a policy, collects a premium a part of which he retains as his commission according to his custom, and a policy is issued upon information procured by him, he is an agent of the insurer by implication as to the insured *583 who, in good faith, dealt with him as such."
We find no conflicting statutory restrictions in our insurance law. Forasmuch as Frazier was licensed as an insurance agent, although he represented no insuring companies, other than Bankers' Life Insurance Company, he was qualified to act as the representative of the Gibson Agency with the latter's permission. Neither is there any language in the agency agreement between Marquette and Gibson Insurance Agency, Inc. prohibiting the Gibson agency from employing solicitors without the express approval of the company. In fact, the agency agreement seems to contemplate that the Gibson agency should hire its own solicitors.
Frazier contends he was engaged to solicit insurance for the Gibson agency. Gibson denies this and argues Frazier was an independent insurance agent acting as a broker for Miss McIntyre.
As was further stated in Granite State Fire Insurance Company v. Mitton, supra:
"Agency is ultimately a question of the intention of the parties, as evidenced by their acts, and is not dependent upon what the particular person in question is called. * * * 2 Am.Jur., § 24, p. 26. Even in the absence of an express agreement that an agency relation is to be created, such a relation may be inferred from the acts of the parties. In the Restatement of Agency, 15, at page 51, it is stated: `Thus if the principal requests another to act for him with respect to a matter, and indicates that the other is to act without further communication and the other consents so to act, the relationship of principal and agent exists.'"
The following discussion of solicitors appears in Appleman, Insurance Law and Practice, Vol. 16, sec. 8698, pp. 120-121:
"The soliciting agent of an insurance company can bind his company as to matters within the restricted scope of his authority in the taking and preparation of an application for insurance, and the insurer cannot repudiate his acts within the scope of his real or apparent authority. * * * Such agent may be the agent of the company and his acts those of the company, even though he is not complying with what the main office had directed the branch office to do."

* * * * * *
"An agent authorized not only to solicit applications but to deliver policies and thereafter to collect weekly premiums has apparent authority to bind the insurer, unless the insured has notice of actual limitations upon his authority. Where one held out by an insurer as its agent receives an application for a policy, collects the premium, and delivers the policy, the insurer is liable in the event of loss, particularly where it received and kept the premium. The statute dividing representatives of insurance companies into brokers and agents does not change the rule permitting an insured, in making a premium payment, to rely upon the implied authority to receive the premium which the insurer confers on the person to whom the policy has been given for delivery. * * *"
In support of its argument that Frazier was a broker and such a broker is an agent of the insured, defendant, Marquette Casualty Company cites: Conley v. Dilbeck Dominey Ins. Agency, Inc. et al., La.App., 40 So.2d 820 (2d Cir. 1949); Morris McGraw Wooden Ware Co., Ltd. v. German Fire Ins. Co. of Pittsburgh, Pa., (1910), 126 La. 32, 52 So. 183, and 38 L.R.A.,N.S., 614, 20 Ann.Cas. 1229.
In Conley v. Dilbeck Dominey Ins. Agency, Inc., et al., supra, the plaintiff contacted the Goff Agency seeking compensation insurance. The Goff Agency contacted the Dilbeck Dominey Agency and requested *584 that this agency assist in securing a policy of compensation insurance for plaintiff. This agency contacted Clara Brown, licensed agent of Keystone Mutual Casualty Company, who issued the policies on behalf of her principal. The court held the Dilbeck Dominey Agency to be a broker or intermediary of both the insured and the insurer.
In Morris McGraw Wooden Ware Co., Ltd. v. German Fire Ins. Co. of Pittsburgh, Pa., supra, decided before the advent of the Louisiana Insurance Code, the Rocquet Agency had charge of the insurance of the plaintiff company's stock. The decision reported that Rocquet & Co. did that which other agents do frequently. It applied to other local agents for policies in order to assist it (Rocquet & Co.) in carrying the large amount of its insurance for McGraw & Co. The local agents applied to, obtained the policies, and delivered them to Rocquet & Co., as is the custom. The evidence shows that it is the custom, whenever insurance is effected by one agency through another agency, for these agencies to divide commissions. The Rocquet Agency was ordered by McGraw & Co. to cancel all policies over and above a certain amount without naming whose policies were to be canceled. The selection of the companies whose policies were to be canceled was left to the agency. Certain policies were canceled by the Rocquet Agency but the fire which destroyed plaintiff company's stock occurred without any notice having been given of the cancellations to the insurance companies. The Supreme Court held Rocquet Agency to be an agent of the insured. The court felt that the Rocquet Agency acted as a broker in procuring insurance for the plaintiff company and that the agreements between Rocquet and the other local agencies to divide commissions did not make Rocquet the agent of the companies represented by the other agencies. Therefore, notice of cancellation to Rocquet & Co. was not notice to these insurance companies.
The record reveals Frazier was actively engaged in the solicitation of insurance and that all insurance solicited, other than life, was placed with the Gibson agency. Frazier had no discretion in the ultimate placement of the insurance with a particular company, but after the solicitation, the Gibson agency dealt directly with the policyholders, and Frazier was allowed or directed to assist in the collection of premiums and handling of certain policy details. Frazier, although qualified as an insurance agent, was not licensed as a solicitor for the Gibson agency. We are of the opinion that he was acting with authority from that agency in his dealings with Miss McIntyre concerning extended coverage of an insurance agreement already in existence between the insured and the Marquette Casualty Company. Knowledge of an insurance agency and its agent is imputed to the insurance company. Gitz Sash Factory v. Union Ins. Soc. of Canton, Ltd., 160 La. 381, 107 So. 232 (1926). Therefore, notice of the acquisition of the Mercury given by Miss McIntyre to Frazier, was notice to the Gibson Insurance Agency and its principal, Marquette Casualty Company. For the foregoing reasons the Mercury involved in the collision was covered by a liability insurance policy issued by Marquette Casualty Company and plaintiffs are entitled to sue that insurer under the direct action statute, LSA-R.S. 22:655.
In its third party petition and in its brief, Marquette contends it should be able to recover the amount of its liability from third party defendants, Frazier, Gibson Insurance Agency, Inc., C. G. Gibson and Michigan-Millers Mutual Insurance Company. Marquette argues that its liability was caused by the Gibson Agency's violation of its contract with Marquette in failing to notify it of the additional risk or collect the premium thereon.
Recovery of an insurer from its agent has been allowed in this state where *585 circumstances indicate a breach of contract. American Fire & Marine Insurance Company v. Seymour, La.App., 144 So. 775 (2d Cir. 1932). In the instant case the agency agreement between Marquette and Gibson Insurance Agency, Inc. required that the latter make a report daily of all risks assumed. In its third party complaint Marquette charges that if Miss McIntyre gave notice to Frazier, and if Frazier was the representative of Gibson Insurance Agency, Inc., the latter had constructive notice of the extension of the policy's coverage to the Mercury and should be held liable for violation of the agency agreement in failing to report the additional risk to the company. Marquette Casualty Insurance Company, however, has failed to establish that the omission charged to its agent caused it damage. Undoubtedly, if such notice had been timely given to the insurer it would have sustained the same loss as if no actual notice was given. We conclude, therefore, that the insurer has not established such prejudice as to entitle it to damages, and accordingly, the third party demand is denied.
Although C. G. Gibson has been personally sued, the question of his liability arises under a policy written by Gibson Insurance Agency, Inc. No evidence has been presented that would indicate Gibson was personally liable for debts of the incorporated agency.
Millard G. Mathews' automobile was covered under a $100.00 deductible policy of collision insurance issued by intervenor, Motors Insurance Corporation. The record reveals plaintiff Millard G. Mathews paid $100.00 and intervenor paid $159.88 for the repair of damage sustained by plaintiff's automobile as a result of the collision. For the foregoing reasons there will be judgment in favor of plaintiff, Millard G. Mathews and against defendant, Marquette Casualty Company, in the amount of One Hundred ($100.00) Dollars. The demands of Motors Insurance Corporation were dismissed by the trial court and it has not appealed. Accordingly, the question of defendants' liability to intervenor is not before this court.
Dr. R. M. Bridges testified he examined Mrs. Mathews on May 20th, shortly after the accident. His diagnosis at that time was that she suffered from a moderate lumbosacral sprain, mild contusions of the left arm and left leg and emotional shock. The sprain showed objective symptoms of muscular spasm in both para spinal areas. Dr. Bridges later ordered Mrs. Mathews into the hospital for severe nervousness and continuous pain in the back. She was hospitalized five days. The record reveals that Mrs. Mathews suffered from pain and nervousness several months and lost time from work. Dr. Ray E. King, an orthopedic surgeon who saw Mrs. Mathews about five months after the date of the collision, testified he thought she would have no permanent residual as a result of her injuries. He estimated she would be over the effects of the sprain within two or three months of the date of examination. Mrs. Mathews proved medical expenses of One Hundred Sixty-Three and 15/100 ($163.15) Dollars. We think an award of Two Thousand ($2,000.00) Dollars for pain, suffering and disability is reasonable. Le Jeune v. United States Fidelity & Guaranty Co., La. App., 105 So.2d 327 (1st Cir. 1958); Veal v. Audubon Ins. Co., La.App., 114 So.2d 648 (1st Cir. 1959).
Defendants' refusal to pay plaintiffs' demands was not arbitrary and plaintiffs' claim for penalties and attorneys' fees is denied.
It is now ordered that the judgment of the District Court be annulled, reversed and set aside insofar as it rejects the demands of plaintiffs against defendant, Marquette Casualty Company.
It is ordered that there be judgment in favor of Millard G. Mathews and against Marquette Casualty Company in the amount of One Hundred ($100.00) Dollars, with legal interest from judicial demand.
*586 It is further ordered that there be judgment in favor of Mrs. Vera A. Mathews and against Marquette Casualty Company in the amount of Two Thousand One Hundred Sixty-Three and 15/100 ($2,163.15) Dollars, with legal interest from date of judicial demand. The judgment from which appealed is affirmed in all other respects.
All costs are to be paid by Marquette Casualty Company.