bPARRO, J.
In this workers’ compensation action, the administratrix of the succession of a deceased employee appeals from a summary judgment of the Office of Workers’ Compensation Administration, which denied her claim for a lump-sum benefit for catastrophic injury under LSA-R.S. 23:1221(4)(s). For the following reasons, the judgment is affirmed.

Facts and Procedural History

On May 10, 2002, Mureal Bridges’ husband, John L. Bridges, was severely injured in the course and scope of his employment with Brunt Construction, Inc. (Brunt) as the result of an explosion that occurred in connection with a construction project at Southeastern Louisiana University in Hammond. This explosion occurred due to an accumulation of acetylene gas that had leaked from a welding set stored in a closed construction trailer. Mr. Bridges sustained severe injuries, including a possible fracture of the Cl vertebrae with quadriplegia, and was removed from life support approximately eight hours after the accident based on his grim prognosis. Mr. Bridges died shortly thereafter.
Mrs. Bridges filed a disputed claim form seeking to recover $30,000 under the catastrophic injury benefit provision of LSA-R.S. 23:1221(4)(s).[1] In light of the death benefits already being paid to the Bridges family pursuant to LSA-R.S. 23:1231, Brunt contended that Mrs. Bridges was not entitled to benefits under LSA-R.S. 23:1221(4)(s). Cross motions for summary judgment were filed relative to the applicability of LSA-R.S. 23:1221(4)(s). Following a hearing, the workers’ compensation judge (WCJ) granted Brunt’s motion and dismissed Mrs. Bridges’ claim. The basis for the WCJ’s rejection of the claim was Brunt’s inability to get a second medical opinion and Mrs. Bridges’ failure to prove that the statutory requirements for qualification for a lump-sum disability benefit had been satisfied. From the judgment of dismissal, Mrs. Bridges appealed, contending the WCJ erred in finding that the absence of a second medical opinion has a | ^bearing on the payment of benefits, in finding that Mr. Bridges had not qualified for benefits under LSA-R.S. 23:1221(4)(s), and in failing to grant benefits pursuant to this statute.

Discussion

Under the workers’ compensation law, the term compensation comprehends three items of loss to the employee who is injured in a non-fatal accident. First, and most important, he is entitled to a sum which partially compensates him for loss of earning capacity. This is calculated at the time of injury and presupposes that the worker has suffered a disability of some kind and a concomitant loss of earning capacity. Second, he is entitled to medical and hospital expenses and related costs, including travel expenses, subject to no maximum monetary amount; expenses of rehabilitation may also be recovered. Finally, he may be entitled to a small sum for the loss of certain enumerated limbs or organs, or for disfigurement, without regard to the effect such loss may have on his earning capacity. These so-called “schedule” losses are now called permanent partial disability awards. Wex S. Malone & H. Alston Johnson III, Workers’ Compensation Law and Practice § 271 at 627-628, in 13 Louisiana Civil Law Treatise (4th ed.2002).
*404 Louisiana Revised Statute 23:1221 sets forth a schedule of payments of indemnity benefits based on the following categories of disabilities: temporary total disability, permanent total disability, supplemental earnings benefits,[2] and permanent partial disability.[3] At issue in this case is a provision found in the permanent partial disability category. In pertinent part, Section 1221 provides:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
[[Image here]]
14(2) Permanent total.
[[Image here]]
(3) Supplemental earnings benefits.
[[Image here]]
(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
* * *
(j) Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or one hand and one foot, or any of two thereof, or paraplegia, or quadriplegia shall, in the absence of conclusive proof of a substantial earning capacity, constitute permanent total disability.
* * *
(s)(i) In addition to any other benefits to which an injured employee may be entitled under this Chapter, any employee suffering an injury as a result of an accident arising out of and in the course and scope of his employment shall be entitled to a sum of thirty thousand dollars, payable within one year after the date of the injury. Interest on such payment shall not commence to accrue until after it becomes payable. Such payment shall not be subject to any offset for payment of any other benefit under this Chapter. Such payment shall not be subject to a claim for attorney fees; however, attorney fees may be awarded in a claim to collect such payment pursuant to R.S. 23:1201.2.
(ii) In any claim for an injury, it must be established by clear and convincing evidence that the employee suffers an injury and that such resulted from an accident arising out of and in the course and scope of his employment. Nothing herein shall limit the right of any party to obtain a second medical opinion or, in appropriate cases, the opinion of an independent medical examiner pursuant to R.S. 23:1123.
(iii) Only the following injuries shall be considered injuries for which benefits pursuant to this Subparagraph may be claimed:
(aa) Paraplegia or quadriplegia or the total anatomical loss of both hands, or both arms, or both feet, or both legs, or both eyes, or one hand and one foot, or any of two thereof; however, functional loss or loss of use shall not constitute anatomical loss. *405 (bb) Third degree burns of forty percent or more of the total body surface.
(iv) Notwithstanding the provisions of R.S. 23:1291.1 and 1377, any benefit paid pursuant to this Subparagraph shall be reported to the office separately from any other benefit paid pursuant to this Chapter and shall not be subject to assessment by the office or by the Louisiana Workers’ Compensation Second Injury Board.
(v) The provisions of this Subparagraph shall apply to claims arising from Ran injury which occurs on or after May 1, 1996 and before July 1, 2003.[4] (Footnote added).
In a claim for benefits pursuant to LSA-R.S. 23:1221(4)(s), it must be established by clear and convincing evidence that the employee suffers from a qualifying injury as defined in Subparagraph (s)(iii) and that such injury resulted from an accident arising out of and in the course and scope of his employment. See LSA-R.S. 23:1221(4)(s)(ii). The employer must remit payment of the lump-sum benefit within one year after the date of the injury. See LSA-R.S. 23:1221(4)(s)(i). Between the date of the injury and its one-year anniversary, the parties are afforded the opportunity to obtain a second medical opinion or, in appropriate cases, the opinion of an independent medical examiner (IME) pursuant to LSA-R.S. 23:1123. See LSA-R.S. 23:1221(4)(s)(ii). Subparagraph (s) does not expressly indicate at what point in time an injured employee’s entitlement to the payment of a lump-sum benefit accrues. The WCJ found that LSA-R.S. 23:1221(4)(s)(i) specifically provides for a disability period of one year before the lump-sum benefit is payable. We disagree with the WCJ’s conclusion on these points.
The time for payments of workers’ compensation benefits is generally governed by LSA-R.S. 23:1201. Payments of compensation under the workers’ compensation law shall be paid as near as may be possible, at the same time and place, as wages were payable to the employee before the accident. LSA-R.S. 23:1201(A). Payment times for the various types of workers’ compensation indemnity benefits are predicated on the payment of such benefits in installments. See LSA-R.S. 23:1201(B)-(D). Because the benefit provided for in LSA-R.S. 23:1221(4)(s) is not payable in installments, the time for payment of such benefit would not be dictated by LSA-R.S. 23:1201. The language “payable within one year after the date of the injury” was seemingly included in LSA-R.S. 23:1221(4) (s) (i) to establish the time of payment for the catastrophic injury lump-sum benefit. Furthermore, the quoted language dictates the time of payment and does not establish a period of disability. Moreover, based on the language of Sub-paragraph | B(s)(ii) regarding the burden of proof, we find that the lump-sum benefit becomes payable, in the event of a dispute, as soon as the WCJ considers the evidence presented by the parties and renders a favorable ruling for the employee, provided that in all cases payment is tendered “within one year after the date of the injury.”
The ultimate res nova issue before this court is whether an employee with a qualifying injury must survive the injury-causing accident in order to be eligible to recover the lump-sum benefit. In resolving this issue, we first note the relevant provisions of the death benefit section of the workers’ compensation law. Section 1231(A) provides, in pertinent part:
*406 For injury causing death within two years after the last treatment resulting from the accident, there shall be paid to the legal dependent of the employee ... a weekly sum as provided in this Sub-part.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. See LSA-C.C. art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in’which they occur and the text of the law as a whole. LSA-C.C. art. 12. The meaning of a statute is to be interpreted by looking to all sections taken together so that no section, clause, sentence, or word becomes superfluous or meaningless. Barrilleaux v. NPC, Inc., 98-0728 (La.App. 1st Cir.4/1/99), 730 So.2d 1062, 1065, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672. If a statute is not clear on its face, the meaning must be determined. Statutory interpretation is in the province of the judiciary. The paramount consideration in interpreting a statute is ascertaining the legislature’s intent and the reasons that prompted the legislature to enact the law. Southlake Development Company v. Secretary of the Department of Revenue and Taxation for the State of Louisiana, 98-2158 (La.App. 1st Cir.11/5/99), 745 So.2d 203, 205, writ denied, 99-3405 (La.2/4/00), 754 So.2d 235.
Because LSA-R.S. 23:1221(4)(s) does not clearly state how long a claimant must survive a disabling qualifying injury in order to be entitled to the permanent partial disability lump-sum benefit, there is an inherent ambiguity in every case in which a claimant dies as a direct result of injuries enumerated in the statute. Therefore, a |7search for the legislative intent in connection with the enactment of Subparagraph (s) of Paragraph (4) by the passage of 1996 La. Acts, 1st Extra. Sess., No. 31, § 1, is helpful in interpreting the meaning of this provision.
The minutes from the Louisiana Senate Labor and Industrial Relations Committee held on April 10, 1996, contained the testimony of Steve Cavanaugh of the Louisiana Workers Compensation Corporation concerning the intent behind the proposed legislation — House Bill No. 32. This legislation was intended to provide compensation to workers who are catastrophically injured — i.e., terrible burns, paraplegia or quadriplegia — -by providing them with an extra award of $30,000. Under the proposed legislation, the person seeking recovery of the extra award had the burden of clearly demonstrating his situation. Mr. Cavanaugh explained that this is not always as simple as it sounds. Because some of the conditions resolve, the proposed legislation required that a person with a qualifying injury “wait a little while in order” to get the award. Mr. Cava-naugh explained:
You can’t show up and say, I’m a quadriplegic or paraplegic and ... get the award tomorrow. I think that is in general terms consistent with the current law because [under] the current law if you have one of these scheduled benefit type situations, you usually get it spread out over 100 weeks or 150 weeks. This is a lump sum payment, but it’s not payable on the very first day that somebody could demonstrate this situation ....
The lump-sum award is intended as a bonus to someone who suffers a truly catastrophic loss.
At the committee meeting, it was suggested that the bill be amended to make entitlement and recovery of the lump-sum benefit be determined on the basis of notice of injury as with other indemnity ben- *407 efíts, thus relieving the injured worker and his family from the proposed one-year waiting period. In response to this suggestion, it was noted that a one-year waiting period might be necessary in order for the actual extent of the loss to be determined. Notably, this discussion corresponds with the legislation’s provision allowing for a second opinion or an IME. The proposed amendment that would have changed the one-year period was subsequently withdrawn.
The legislative intent does not expressly resolve the issue of whether an | ^employee with a qualifying injury must survive the injury-causing accident for a certain period of time in order to be eligible to recover the lump-sum benefit. However, that is not the issue before this court at this time. Rather, we must determine if simply “surviving” the accident is sufficient under this statute to establish eligibility. After considering the legislative intent, we think not.
As applied to the facts of this case, the language of the provision of the permanent partial disability statute under consideration, LSA-R.S. 23:1221(4)(s), is ambiguous and would lead to an absurd consequence, in that catastrophic injuries resulting in death would, in every case, also qualify as injuries resulting in permanent partial disability. Death is, after all, the ultimate disability, resulting in the permanent loss of use of all limbs, eyesight in both eyes, quadriplegia, and all the other enumerated “disabilities.” There is also no doubt that death hinders employment or re-employment. Simply stating the literal application of the statutory language demonstrates its absurdity. Had the legislators intended this result, they could easily have referenced the lump-sum provision in the section of the workers’ compensation law addressing death benefits. When the two sections of the law are read “in pari mate-ria,” the logical conclusion is that the lump sum payment for an enumerated injury resulting in permanent partial disability is compensation for injuries that disable, but do not kill, the claimant.[5] Death benefits, on the other hand, are compensation for those injuries that kill. The legislative history and the definition of permanent partial disability demonstrate that, underlying the permanent partial disability lump-sum benefit is an assumption that the injured person survives the injury. When death is the certain and inevitable result of the injuries, the permanent partial disability lump-sum payment is inapplicable. In other words, there must be a reasonable expectation of living with the disability before the employee will be entitled to the lump-sum benefit.
Based on the evidence in the record, there was no reasonable expectation that Mr. Bridges would be able to live with his disabilities, as confirmed by his death after being removed from life support approximately eight hours after the accident. Under 18these facts and circumstances, there was no genuine issue of material fact as to the entitlement by Mr. Bridges’ succession to the lump sum benefit. Therefore, the motion for summary judgment was properly granted. Accordingly, we affirm the judgment of the WCJ.

Decree

For the foregoing reasons, the judgment of the Office of Workers’ Compensation Administration is affirmed. Costs of this appeal are to be shared by Mureal *408 Bridges, as administratrix; and Brunt Construction, Inc.
AFFIRMED.
GUIDRY, J., concurs.
CARTER, J., dissents with reasons.

. She originally filed in her individual capacity and on behalf of her minor children. However, after various unfavorable procedural rulings, she amended her petition to proceed in her capacity as the administratrix of the succession of her deceased husband.

. These benefits are paid for injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at the time of the injury.

. Permanent partial disability is statutorily defined as “any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.” LSA-R.S. 23:1378(F).

. July 1, 2006, was substituted for July 1, 2003, by 2003 La. Acts, No. 306, § 1, which became effective after the date of the accident in this case.

. This conclusion also comports with the presumption of total and permanent disability set forth in LSA-R.S. 23:122l(4)(j) resulting from these identical enumerated injuries.