927 So.2d 1242 (2006)
Richard RYAN, Plaintiff-Appellant
v.
BLOUNT BROTHERS CONSTRUCTION, INC., Defendant-Appellant
Louisiana Health Service & Indemnity Company, Intervenor-Appellee
Richard Ryan, Plaintiff-Appellant
v.
Ryan Construction Company, Inc., Defendant-Appellant.
No. 40,845-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 19, 2006.
*1245 Aubrey R. Snell, Randall R. Robinson, Bossier City, for Appellant, Richard Ryan and Ryan Construction Company, Inc.
Michael A. Stroud, for Appellant, Blount Brothers Construction, Inc. and LUBA.
Robert A. Dunkelman, Shreveport, for Appellant, Employers Self Insurers Fund.
Charles A. O'Brien, III, Baton Rouge, for Appellee, Louisiana Health Service & Indemnity Company.
Before BROWN, WILLIAMS and PEATROSS, JJ.
WILLIAMS, J.
Claimant, Richard Ryan, filed separate workers' compensation claims against his direct employer, Ryan Construction Company, Inc. ("Ryan Construction") and his statutory employer, Blount Brothers Construction, Inc. ("Blount Brothers"), alleging he sustained an injury while in the course and scope of his employment. Following a hearing, the workers' compensation judge ("WCJ") rendered judgment in favor of claimant and against Ryan Construction and its insurer, awarding, inter alia, permanent and total disability benefits from the date of injury and all medical expenses associated with the injury. Blount Brothers' insurer was assessed penalties and attorney fees. All parties have appealed. For the following reasons, we affirm in part, and reverse in part.

FACTS
In July 2002, Blount Brothers was awarded a contract by the city of Shreveport to construct a retaining wall. Blount Brothers subcontracted with Ryan Construction to perform the concrete work on the project. Claimant was an owner/employee of Ryan Construction. On February 13, 2003, while operating a track hoe at the job site, claimant was accidentally shot by a child who was playing with a gun in a nearby neighborhood. Claimant suffered a spinal cord injury as a result of the shooting.
The parties do not dispute that claimant was injured while in the course and scope of his employment. However, a dispute arose with regard to which employer  Blount Brothers, the statutory employer, or Ryan Construction, the direct employer *1246  was responsible for paying workers' compensation benefits. Both parties refused to pay. At the time of the incident, Ryan Construction was self-insured for workers' compensation liability through Employers' Self Insurers Fund ("ESIF"), and Blount Brothers was self-insured through Louisiana United Businesses Association Self Insurers Fund ("LUBA").
On April 13, 2003, claimant filed separate disputed claims for workers' compensation benefits against Blount Brothers and Ryan Construction.[1] Both ESIF and LUBA disputed coverage. ESIF claimed that claimant was not a covered employee under the policy issued to Ryan Construction. LUBA disputed coverage claiming that claimant was a covered employee under ESIF's policy; therefore, ESIF was responsible for paying benefits. LUBA also filed a cross-claim and third party demand, contending that it and Blount Brothers were entitled to seek indemnity for any workers' compensation paid should they be found liable.
As a result of the insurers' refusal to pay medical benefits, the medical expenses incurred after the accident were paid by Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("Blue Cross") through a group health insurance policy provided by Caddo Parish School Board, which employed claimant's wife. Blue Cross ultimately filed a petition of intervention seeking reimbursement for the amount it had paid for claimant's medical expenses.
Both LUBA and ESIF filed cross motions for summary judgment on the issue of coverage. In addition to denying that it was claimant's statutory employer, LUBA contended that it was not liable to claimant because claimant had workers' compensation insurance coverage through ESIF at the time of accident. In its motion for summary judgment, ESIF argued that although Ryan Construction was covered under its policy, claimant was not covered individually.
The WCJ granted summary judgment in favor of LUBA in part, finding that ESIF provided coverage for claimant's workers' compensation claim. The judge denied summary judgment with regard to LUBA's potential liability for statutory penalties and attorney fees. ESIF's motion for summary judgment was denied in its entirety.[2]
The matter proceeded to trial. The parties submitted numerous stipulations, including: claimant's average weekly wages were $350; Blue Cross paid $188,307.18 in medical expenses; and claimant's wife paid 25% of the premium for the Blue Cross policy through her employment with the Caddo Parish School Board.
The evidence submitted during the trial reveals that claimant underwent seven operations following the accident, and he was hospitalized at Louisiana State University Medical Center ("LSUMC") for three months. Following his discharge from LSUMC, he received physical therapy at Cornerstone Hospital. While at Cornerstone Hospital, claimant developed an infection and was again hospitalized at LSUMC. During the course of his treatment at LSUMC, claimant was diagnosed with a heart condition, with a possibility of future cardiac surgery.
Claimant's treating physician opined that claimant is unable to work and will be *1247 unable "to seek any employment that requires normal hours, standing, walking or other activities involving the lower extremities." Claimant testified that, primarily, he remains confined to a wheelchair. However, he is able to drive a specially modified truck, can walk with the aid of braces and crutches and can shop in stores in a motorized cart. His home has been modified to make it handicap accessible.
Following the trial, the WCJ found in favor of claimant and Blue Cross. The WCJ ordered as follows: (1) ESIF shall pay to claimant permanent and total disability benefits in the amount of $233.33 per week, retroactive to the date of the injury; (2) ESIF shall pay all medical expenses associated with the injury, including claimant's out-of-pocket expenses in the amount of $11,415.27 and medical mileage expenses in the amount of $975; (3) ESIF shall provide medical treatment with claimant's choice of physicians; (4) ESIF shall reimburse Blue Cross 25% of the $188,307.18 it paid for claimant's medical expenses; (5) LUBA shall pay penalties to claimant in the amount of $4,000 ($2,000 for the denial of medical treatment and $2,000 for the denial of indemnity benefits) and attorney fees in the amount of $21,210.47. All parties have appealed the judgment.

DISCUSSION

Subject Matter Jurisdiction
For the first time in this court, ESIF argues that the Office of Workers' Compensation ("OWC") lacked subject matter jurisdiction to decide the issue of whether its insurance policy provided coverage for claimant individually.[3] According to ESIF, the insurance coverage issue did not "arise out of" but merely "relates to" the workers' compensation laws.[4]
LSA-R.S. 23:1310.3(E) provides, in pertinent part:
[T]he workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including, but not limited to, workers' compensation insurance coverage disputes. . . .
If an issue arises out of the Workers' Compensation Act, jurisdiction is vested in the OWC; however, if it merely relates to the compensation claim, the OWC does not have subject matter jurisdiction. Weatherton v. Isle of Capri Casino, 36,677, 36,682 (La.App. 2d Cir.12/11/02), 833 So.2d 1058, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 802, reconsideration denied, (La.6/6/03), 845 So.2d 1078, (La.9/5/03), 852 So.2d 1038; Williams v. Midwest Employers Cas.Co., 28,118 (La.App. 2d Cir.2/28/96), 669 So.2d 616, writ denied, 96-0820 (La.5/17/96), 673 So.2d 610.
The starting point for the interpretation of any statute is the language of the statute itself. Richard v. Hall, XXXX-XXXX (La.4/23/04), 874 So.2d 131; SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La.6/29/01), 808 So.2d 294; Cat's Meow, Inc. v. City of New Orleans, 98-0601 *1248 (La.10/20/98), 720 So.2d 1186. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written and no further interpretation may be made in search of legislative intent. See LSA-C.C. art. 9; LSA-R.S. 1:4.
In this case, LSA-R.S. 23:1310.3 is clear and unambiguous. A plain reading of the text of the statute provides that the WCJ shall have subject matter jurisdiction over all claims arising out of the Workers' Compensation Act, including workers' compensation insurance disputes.
To support its contention that workers' compensation insurance coverage disputes do not "arise out of" the Workers' Compensation Act, ESIF relies on this court's ruling in Williams, supra. There, the claimant had been awarded workers' compensation benefits and sought to enforce that judgment against the insurer which had issued an excess policy to his self-insured employer. The coverage issues involved included whether the employer's failure to become a qualified self-insurer rendered the excess insurance policy invalid; whether the employer's failure to become a qualified self-insurer precluded the classification of the policy as one of indemnity; and whether the excess insurance policy "drops down" to cover the claimant's workers' compensation claim. This court found that those issues did not "arise out of," but merely "related to" the Workers' Compensation Act and ultimately concluded that the WCJ did not have subject matter jurisdiction over the matter.
First, we note that Williams is distinguishable from the instant case. In Williams, all of the disputes with regard to the injury and benefits had been resolved, and a default judgment had been entered against the claimant's employer, who was insolvent. Subsequently, the claimant amended his petition to add his employer's excess insurer, seeking payment of the default judgment. As this court noted, all of the coverage issues "necessarily ha[d] to be determined by an interpretation of the Midwest excess insurance policy and its terms and provisions." Williams, 669 So.2d at 619.
In the instant case, claimant sustained an injury during the course and scope of his employment and filed a disputed claim for workers' compensation benefits. The only issue in dispute with regard to the ESIF policy involved coverage, i.e., whether coverage under the workers' compensation policy issued by ESIF to Ryan Construction was subsequently extended to include claimant individually. No interpretation of the language of the policy is required which might indicate that the OWC is not the proper tribunal to determine the coverage issue. Thus, we find that the issue involved herein arises out of the workers' compensation laws, and the OWC had subject matter jurisdiction over that issue pursuant to the plain language of LSA-R.S. 23:1310.3. Thus, we find ESIF's contention is without merit.

ESIF's Liability
ESIF further contends claimant failed to meet his burden of proving that he was covered individually under the workers' compensation insurance policy issued to Ryan Construction. The initial self-insurance contract between Ryan Construction and ESIF indicates that claimant and his wife are owners of the company, and claimant elected not to be covered under the terms of the policy. In 2002, claimant was awarded the subcontract with the City of Shreveport which required him to be insured individually under the policy issued to Ryan Construction. Claimant instructed his insurance broker, Greg Davis, that claimant needed to obtain individual coverage. According to Davis, obtaining individual coverage only required *1249 increasing the premium to include the payroll of claimant and his wife and sending a note to ESIF indicating that claimant wanted individual coverage. Claimant increased his premium to ESIF to receive individual coverage.
In its argument with regard to the coverage issue, ESIF relies primarily upon this court's decision in American Zurich Ins. Co. v. Johnson, 37,567 (La.App. 2d Cir.7/30/03), 850 So.2d 1112. In that case, Lincoln Builders, a general contractor, subcontracted with Johnson Drywall. Johnson Drywall paid a premium to an independent insurance agent, James Fortner, and obtained a certificate of insurance. The certificate, which was issued in error and under the name of another company, was provided to Lincoln Builders to show that Johnson Drywall had workers' compensation insurance through Fidelity Security Insurance Company ("Fidelity"). Subsequently, one of Johnson Drywall's employees was injured on the job. Lincoln Builders, as the statutory employer, paid benefits through its workers' compensation insurer, American Zurich Insurance Company and then filed suit seeking reimbursement of the benefits paid, naming as defendants Johnson Drywall, Fidelity and Fortner. Fidelity moved for summary judgment, contending it was not liable because the insurance policy was never in force. The court granted summary judgment in favor of Fidelity, finding Fortner did not have the apparent authority to bind Fidelity.
Our review of Johnson shows that it is not dispositive of the coverage issue presented herein. In Johnson, all of the parties conceded that Fidelity had never issued any insurance coverage to Johnson Drywall. Fortner admitted that the certificate of insurance had been issued in error and that he was responsible for Lincoln Builders' loss. In this case, Davis had transacted business with ESIF for several years and had often issued certificates of insurance on its behalf, with ESIF's knowledge.
Our review of the relevant jurisprudence reveals that this case is more analogous to this court's ruling in Mathews v. Marquette Cas. Co., 152 So.2d 577 (La.App. 2d Cir.1963), writ denied, 244 La. 662, 153 So.2d 880 (1963). In Mathews, a policy had been issued by Marquette Casualty Company ("Marquette Casualty") on a vehicle owned by Dorothy McIntyre. The policy contained a provision for coverage of after-acquired automobiles upon proper notice to Marquette. The policy had been solicited by Charles Frazier and issued through the Gibson Insurance Agency Inc. ("Gibson Insurance"). Subsequently, McIntyre purchased an additional vehicle and, according to the provisions of her policy, she went to Frazier and requested that the new vehicle be covered under the Marquette Casualty policy. McIntyre paid Frazier the additional premium. Thereafter, she was involved in an accident while driving the new vehicle, and Marquette Casualty denied coverage. Both Marquette Casualty and Gibson Insurance contended McIntyre failed to give proper notice to the insurers as required by the policy to obtain coverage for the new vehicle.[5]
This court held that Frazier was authorized as a representative of Gibson Insurance to bind it and Marquette Casualty, *1250 and the vehicle involved in the collision was covered by the Marquette Casualty policy. We stated:
The record reveals Frazier was actively engaged in the solicitation of insurance and that all insurance solicited, other than life, was placed with the Gibson agency. Frazier had no discretion in the ultimate placement of the insurance with a particular company, but after the solicitation, the Gibson agency dealt directly with the policyholders, and Frazier was allowed or directed to assist in the collection of premiums and handling of certain policy details. Frazier, although qualified as an insurance agent, was not licensed as a solicitor for the Gibson agency. We are of the opinion that he was acting with authority from that agency in his dealings with Miss McIntyre concerning extended coverage of an insurance agreement already in existence between the insured and [Marquette Casualty].
* * *
Therefore, notice of the acquisition of the Mercury given by Miss McIntyre to Frazier was notice to [Gibson Insurance] and its principal, [Marquette Casualty].
Mathews, 152 So.2d at 584.
In this case, it is undisputed that ESIF had issued a workers' compensation policy to Ryan Construction. The policy had been procured by Davis. Although claimant had been excluded from coverage under the original policy, he later contacted Davis to obtain individual coverage under that same policy. Art Owens, ESIF's account manager, testified that as long as the policy was in force and paid up to date, claimant had the option of being included under the policy at any time. Owens also testified that at the time claimant requested individual coverage, ESIF had just been taken over by another company, and "there probably weren't any underwriting requirements in place." ESIF does not dispute that it received premiums from claimant for the individual coverage. There is also no dispute that Davis was in the business of procuring insurance coverage on behalf of individuals, often through ESIF. Although the polices were actually issued by ESIF, Davis testified unequivocally that he had often issued certificates of insurance to his customers on behalf of ESIF with ESIF's knowledge and authorization. Thus, we conclude that Davis was acting with authority from ESIF in his dealings with claimant concerning extended coverage of an insurance agreement already in existence between claimant and ESIF.
Moreover, this court also stated in Mathews:
Marquette Casualty Insurance Company. . . has failed to establish that [Frazier's failure to report the additional risk of insuring McIntyre's new vehicle] caused it damage. Undoubtedly, if such notice had been timely given to the insurer, it would have sustained the same loss as if no actual notice was given.
Mathews, 152 So.2d at 585.
In this case, it is apparent from the testimony that Davis' failure to provide ESIF with notice of the additional risk is of no moment. Davis and ESIF's employees admitted that, because the premium was being paid, ESIF would have provided individual coverage to plaintiff.
In denying ESIF's motion for summary judgment on the issue of coverage, the WCJ stated:
I would note that ESIF knew of the policy that had been issued to the City of Shreveport because they issued the first policy all be it [sic] that policy did not include [claimant] as the owner. ESIF's employees, in their depositions, said that there would have been no problem in covering [claimant], that all it *1251 would have taken would have been a note to them to that effect.
Mr. Davis, as the agent or broker, attempted to contact ESIF on, according to his testimony, several occasions to inform them that they needed to reissue. . . the policy, with [claimant] included. For whatever reason, he was unable to contact them. However, Mr. Davis had the authority to issue a policy, as he had done so in the past, and he did issue a policy for ESIF to the City of Shreveport that provided coverage for [claimant].
[Claimant] and the City of Shreveport thought [claimant] was covered by that policy. [Claimant's] company paid premiums on him. All their actions were in reliance upon that policy that was issued by Mr. Davis.
There were numerous problems in this matter. It appears that ESIF was in a change-over period at this time from my reading of the various depositions, and the ball was dropped. However, they would have insured [claimant] automatically, without any investigation because he wasthat was already part of their exposure.
For the reasons set forth above, we agree with the WCJ's reasons. Accordingly, we affirm the WCJ's determination that claimant was covered individually under the ESIF workers' compensation policy. Thus, we affirm the WCJ's determination that ESIF is liable to claimant for the payment of permanent and total disability benefits in the amount of $233.33 per week, retroactive to the date of injury. We further affirm the WCJ's ruling with regard to the payment of claimant's medical expenses, claimant's choice of physicians, the out-of-pocket expenses and medical mileage expenses.

LUBA's Liability
Claimant contends Blount Brothers and LUBA (collectively referred to as "LUBA") should also be responsible for paying compensation benefits, pursuant to LSA-R.S. 23:1061. Conversely, LUBA argues ESIF is responsible for paying benefits to claimant, and claimant is not entitled to double recovery of workers' compensation benefits.
LSA-R.S. 23:1061(A) provides in pertinent part:
[T]he principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
(Emphasis added).
A principal contractor, when sued by an employee of a subcontractor, may call that subcontractor as a co-defendant, and the principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor. LSA-R.S. 23:1063(A). A principal employer is primarily liable for compensation, but shall be entitled to indemnification from the immediate employer. Therefore, if the immediate employer does not pay workers' compensation to an injured worker, the principal employer is obligated to provide the benefits as a matter of law. Keller v. Evans Cooperage, *1252 Inc., 94-006 (La.App. 5th Cir. 5/31/94), 641 So.2d 552.
In this case, it is undisputed that Blount Brothers was the principal employer. The WCJ stated:
. . . LUBA had a valid policy of insurance for the injury all along. Had LUBA paid benefits at the outset until ESIF's coverage issue was resolved, they would have been able to seek indemnification from ESIF if it was ultimately determined that ESIF had primary coverage. Had they paid benefits at the outset and it was ultimately determined that ESIF did not provide coverage to [claimant], they would have been responsible for the benefits anyway.
We agree. Thus, in keeping with the aforementioned legal precepts, it is clear that LUBA was primarily liable for the payment of workers' compensation benefits, as the immediate employer failed to pay compensation. Pursuant to LSA-R.S. 23:1061 and 1063(A), LUBA's only recourse was to pay benefits to claimant and seek indemnification from ESIF. Although we agree with LUBA's contention that claimant is not entitled to double recovery of benefits, for the reasons that follow, we find that LUBA and ESIF are liable, in solido, to claimant for workers' compensation benefits.

Solidary Liability
When an employee is entitled to compensation, and under LSA-R.S. 23:1061 or LSA-R.S. 23:1063, has sued the principal or the principal contractor together with the contractor or subcontractor, the liability of such defendants is solidary. Bowens v. General Motors Corp., 608 So.2d 999 (La.1992). In Bowens, the court stated:
The purpose of these statutes is to expand financial responsibility and to prevent the evasion of the workman's compensation law by the principal's or the principal contractor's interposing between himself and the employee an impecunious contractor or subcontractor. Under these statutes the claimant is entitled to proceed against the principal (or principal contractor) or the contractor (or subcontractor) or both as he chooses. The indemnification clauses, however, have the effect of finally imposing the loss of the principal or principal contractor upon the claimant's immediate employer.
Id. at 1003.
Therefore, for the reasons set forth in Bowens, and as stated above, we conclude that LUBA and ESIF are solidarily liable for workers' compensation benefits, with LUBA retaining its right to seek indemnification from ESIF for any amounts it may pay.

Lump Sum Payment
Claimant further assigns as error the WCJ's denial of his claim for a lump sum payment pursuant to LSA-R.S. 23:1221(4)(s), which provides, in pertinent part:
Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
* * *
(s)(i) In addition to any other benefits to which an injured employee may be entitled under this Chapter, any employee suffering an injury as a result of an accident arising out of and in the course and scope of his employment shall be entitled to a sum of thirty thousand dollars, payable within one year after the date of the injury.
* * *
(iii) Only the following injuries shall be considered injuries for which benefits *1253 pursuant to this Subparagraph may be claimed:
(aa) Paraplegia or quadriplegia or the total anatomical loss of both hands, or both arms, or both feet, or both legs, or both eyes, or one hand and one foot, or any of two thereof; however, functional loss or loss of use shall not constitute anatomical loss.
* * *
In a claim for benefits pursuant to LSA-R.S. 23:1221(4)(s), it must be established by clear and convincing evidence that the employee suffers from a qualifying injury as defined in Subparagraph (s)(iii). See LSA-R.S. 23:1221(4)(s)(ii); Bridges v. Brunt Const., Inc., XXXX-XXXX (La.App. 1 Cir. 12/30/04), 898 So.2d 402. Although the statute does not define the term "paraplegia," it is well-established that the words of a law must be given their general prevailing meaning. LSA-C.C. art. 11. Words must be read in context and must be construed "according to the common and approved usage of the language." LSA-R.S. 1:3. Dictionaries are a valuable source for determining the "common and approved usage" of words. Gregor v. Argenot Great Cent. Ins. Co., XXXX-XXXX (La.5/20/03), 851 So.2d 959; Louisiana Horsemen's Benevolent and Protective Assoc. 1993, Inc. v. Fair Grounds Corp., 02-1928 (La.4/9/03), 845 So.2d 1039.
In TABER'S CYCLOPEDIC MEDICAL DICTIONARY, 1230 (15th ed.1995), the term "paraplegia" is defined as "Paralysis of the lower portion of the body and of both legs." WEBSTER'S II NEW COLLEGE DICTIONARY, 797 (1995) defines "paraplegia" as "Complete paralysis of the lower half of the body including both legs that is caused by injury to or disease of the spinal cord."
In the present case, the record establishes that claimant did not suffer "paralysis of the lower portion of [his] body and of both legs" as a result of the accident in question. Dr. Lou Smith, claimant's primary physician immediately following the accident, described claimant as an "incomplete paraplegic," indicating that while his left leg is paralyzed, claimant has regained some function in his right leg. Dr. Jorge Martinez, a neurosurgeon, testified that he does not consider claimant to be a paraplegic. He stated that his June 28, 2004 examination of claimant reveals that his right leg is fully functional. He described claimant's condition as "monoparesis" (weakness in one leg). The record indicates that at all times since the accident, claimant has experienced some sensation in both legs and was able to move at least his toes. Although claimant continues to have some difficulty walking, he is able to do so with the aid of a walker. Thus, it is clear that he does not meet the definition of a paraplegic in that he is not in a persistent state of paraplegia, as he has the full use of one of his legs. Accordingly, we conclude that claimant was not eligible to receive the lump sum payment under LSA-R.S. 23:1221(4)(s), and the WCJ properly rejected that claim.

Penalties
Claimant also contends that under the Workers' Compensation Act, the WCJ erred in failing to award separate penalties for each violation committed by defendants. The WCJ assessed $2,000 in penalties against LUBA for the denial of medical treatment and $2,000 for the denial of indemnity benefits. Claimant urges that he is entitled to receive separate penalties for each of the following: failure to timely pay each weekly benefit; failure to pay the $30,000 lump sum benefit; failure to pay each medical bill and expense; failure to provide timely mileage reimbursement; failure to reimburse out of pocket medical expenses; failure to pay and/or reimburse all prescriptions related to the accident; failure to provide claimant with his choice *1254 of physicians; and failure to provide any meaningful vocational rehabilitation.
LSA-R.S. 23:1201(F) provides, in pertinent part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim, however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Awards of penalties in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and the undesirable conduct of employers and insurers. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Although it is well accepted that the Workers' Compensation Act is liberally construed with regard to indemnity benefits, it is likewise well established that penal statutes are strictly construed. Williams, 737 So.2d at 46; see also International Harvester Credit v. Seale, 518 So.2d 1039, 1041 (La.1988).
It is well-settled that a dispute between a statutory employer and a direct employer with regard to which one owes compensation benefits is not a justifiable basis for withholding these benefits from an injured worker. Bowens, supra; Demery v. Dupree, 511 So.2d 1268 (La.App. 2d Cir.1987), writ denied, 514 So.2d 456 (La. 1987); Guillot v. Guillot, 445 So.2d 1270 (La.App. 3d Cir.1984); Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3d Cir. 1979), writ denied, 379 So.2d 1102 (La. 1980).
In this case, the WCJ ruled that LUBA was liable for penalties and attorney fees because it knew that it was responsible for paying benefits, yet it "chose to do nothing." We conclude that LUBA's refusal to pay benefits on the ground that it believed ESIF should pay first was not a reasonable ground for LUBA's failure to pay benefits. Therefore, we affirm the WCJ's ruling that LUBA is liable to claimant for penalties and attorney fees because its refusal to pay was not justifiable.
The WCJ did not hold ESIF liable for penalties and attorney fees, noting, "ESIF strenuously disputed coverage at the outset of the claim. . . ." Thus, we must determine whether ESIF's refusal to pay benefits was reasonable under the facts of this case.
In Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885, the court explained the "reasonably controverted" standard as follows:
. . . Unreasonably controverting a claim. . . requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration *1255 and regard for facts and circumstances presented, or of seemingly unfounded motivation. Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern.
The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted. . . a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Brown, 721 So.2d at 890 (internal citations and footnote omitted).
In this case, we find that ESIF did not possess any "information to reasonably counter" claimant's claim that he was covered under the policy. Although claimant had been originally excluded under the policy which covered Ryan Construction, the evidence was sufficient to show that claimant thereafter took the necessary steps to obtain individual coverage. A simple investigation into the claim would have revealed that claimant had provided notice to Davis that he intended to obtain individual coverage, and he had increased his premiums to do so. Davis, in turn, attempted to notify ESIF of the change in coverage. However, presumably due to the change in ESIF's ownership and/or management, he was unable to do so. Thus, Davis provided claimant with a certificate of insurance as he had been authorized to do in the past. ESIF knew that its policy afforded coverage to Ryan Construction and that Davis had issued a certificate, indicating that coverage had been extended to claimant individually. If ESIF believed that Davis had issued the certificate in error, it could have paid benefits to claimant and commenced proceedings against Davis pursuant to LSA-R.S. 23:1101(B).[6] Even after the WCJ denied ESIF's motion for summary judgment on the issue of coverage, ESIF has remained steadfast in its refusal to pay benefits. For these reasons, we conclude that ESIF had no valid basis for its denial of workers' compensation benefits to claimant, and we reverse the WCJ's ruling that ESIF is not liable to claimant for penalties and attorney fees.
Having determined that both LUBA and ESIF are both liable to claimant for penalties and attorney fees, we now turn to the issue of whether claimant is entitled to multiple penalties. In Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La.1/14/03), 836 So.2d 14, the Louisiana Supreme Court addressed the issue of multiple penalties and concluded that LSA-R.S. 23:1201(F) provides for multiple penalties for multiple violations regarding the payment of compensation and medical benefits claims. The court stated:
Viewing the penalty issue contextually, we observe that LA.REV.STAT. ANN. *1256 §§ 23:1201(B), (C), (D), and (E) impose a twofold continuing obligation on the employer/insurer: (1) to pay all compensation and medical benefits due, i.e., payment of the correct amount owed, and (2) to pay for compensation and medical benefits within the time limit specified. It is further evident from the statute that should the employer/insurer not abide by those dictates, the Legislature has made available to the employee the provisions of LA.REV.STAT. ANN. § 23:1201(F) which provide for the assessment of a penalty as well as an award for reasonable attorneys' fees as a means to encourage compliance with the statutory obligations. As exemplified in the two consolidated cases before us, it is readily apparent that an employer/insurer may make multiple errors in this regard and may have two or more claims under LA.REV.STAT. ANN. § 23:1201(F).
Fontenot, 836 So.2d at 24 (fn. omitted). The court continued:
In those instances where a claim is either not reasonably controverted or if nonpayment results from conditions under the control of the employer or insurer, this proviso for multiple penalties will address the recalcitrant employer or insurer and will encourage employers and their workers' compensation insurers to honor their continuing obligation to the injured worker. "[T]o conclude otherwise would dilute the deterrent effect of these statutory provisions, which are not intended to make the worker `whole' but rather to discourage specific conduct on the part of the employer." Simply stated, without such an understanding of the statute, there would be nothing to leverage the obstinate employer or its insurer to comply with their statutory obligation to the injured worker.
Fontenot, 836 So.2d at 25 (internal citations omitted).
The instant matter boils down to two insurers fighting between themselves resulting in the claimant not receiving benefits from either. Claimant, who was injured more than three years ago, has not received workers' compensation benefits from either employer, when either could have paid and sought indemnity from the other. In their refusal to pay benefits, both ESIF and LUBA have violated the purpose of the Workers' Compensation Act. Therefore, it is clear, pursuant to Fontenot, both insurers are liable for separate penalties for the denial of medical benefits and the denial of indemnity benefits.
In addition, we must point out that the Workers' Compensation Act provides for additional benefits, all of which were denied in this case. LSA-R.S. 23:1203(A) provides that the employer of an injured worker "shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal. . . ." Pursuant to LSA-R.S. 23:1203(D), employers are "liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled. . . in order to obtain medical services, medicines, . . . and for the vocational rehabilitation-related mileage traveled. . . ." LSA-R.S. 23:1121 entitles an injured worker to be examined and treated by his choice of physicians. Additionally, pursuant to LSA-R.S. 23:1226, any employee who suffers an injury covered under the Workers' Compensation Act which precludes the employee from earning wages equal to wages earned prior to the injury is entitled to "prompt rehabilitation services" by a licensed professional vocational rehabilitation counselor.
Because claimant herein has received none of the benefits to which he is entitled *1257 under the Workers' Compensation Act, in keeping with Fontenot, supra, we find that ESIF and LUBA are solidarily liable to claimant for each violation of the Act. Thus, we assess penalties in the amount of $2,000 for each of the following violations of the Workers' Compensation Act: (1) the denial of medical benefits, in violation of LSA-R.S. 23:1203(A); (2) the denial of indemnity benefits, in violation of LSA-R.S. 23:1221; (3) the denial of mileage reimbursement, in violation of LSA-R.S. 23:1203(D); (4) the denial of the reimbursement of out-of-pocket medical expenses, in violation of LSA-R.S. 23:1203(A); (5) the denial of the payment of prescription benefits, in violation of LSA-R.S. 23:1203(A); (6) the denial of claimant's choice of physicians, in violation of LSA-R.S. 23:1121; (7) the denial of vocational rehabilitation, in violation of LSA-R.S. 23:1226. Accordingly, we conclude that ESIF and LUBA are solidarily liable to claimant in the total amount of $14,000 in penalties.

Attorney Fees
Under LSA-R.S. 23:1201(F), an injured worker is entitled to reasonable attorney fees for each disputed claim. The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the deposition, the office work and the time spent in court. Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990).
In this case, the WCJ assessed a total of $21,210.47 in attorney fees. Claimant contends that ESIF and LUBA should be equally responsible for the payment of attorney fees. We agree. We conclude that ESIF and LUBA are liable, in solido, for attorney fees in the amount of $21,210.47.
Claimant also urges that the award of attorney fees should be increased due to additional attorney fees incurred in defending this appeal. See Moore v. Conagra Poultry Co., 39,283 (La.App. 2d Cir.1/26/05), 893 So.2d 137; Smith v. Tudor Const., 25,783 (La.App. 2d Cir.05/04/94), 637 So.2d 666. After reviewing of the additional work necessitated by defending this appeal, we conclude that an award of $3,000 in attorney fees is warranted.

Blue Cross
The WCJ ordered ESIF to reimburse Blue Cross $188,307.18, subject to a 75% reduction based on the amount of the premium funded by Mrs. Ryan's employer. Blue Cross contends that the WCJ erred as a matter of law in failing to award it the full $188,307.18, pursuant to LSA-R.S. 23:1205, which provides in pertinent part:
* * *
B. Any company which contracts for health care benefits for an employee shall have a right of reimbursement against the entity responsible for the payment of workers' compensation benefits for such employee if the company paid health care benefits for which such entity is liable. The amount of reimbursement shall not exceed the amount of the entity's liability for the workers' compensation benefit. In the event the company seeks recovery for such in conjunction with a claim against any other party brought by the employee, the company may be charged with a proportionate share of the reasonable and necessary costs, including attorney fees, incurred by the employee in the advancement of his claim or suit.
* * *
Conversely, LUBA and ESIF contend the WCJ correctly limited Blue Cross' recovery, under LSA-R.S. 23:1212, which provides, in pertinent part:

*1258 [P]ayment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
When a law is susceptible to more than one interpretation, the one affording a reasonable and practical effect to the entire act is to be preferred over the one that renders the other part ridiculous or nugatory. SWAT 24, supra; Alliance for Affordable Energy v. Council of City of New Orleans, 96-0700 (La.7/2/96), 677 So.2d 424; Chailland Business Consultants v. Duplantis, 2003-2508 (La.App. 1st Cir.10/29/04), 897 So.2d 117, 126, writ denied, 2004-2922 (La.2/4/05), 893 So.2d 878; Breaux v. Lafourche Parish Council, XXXX-XXXX (La.App. 1st Cir.8/25/03), 851 So.2d 1173. Merely because more than one act of the legislature proscribes particular conduct does not mean that the multiple provisions are irreconcilable. Duplantis, supra; State v. Smith, 597 So.2d 1151, 1153 (La.App. 1st Cir.1992). Statutes specifically directed to the matter at issue must prevail as an exception to the statute more general in character in order to give effect to the legislative intent of the general rule. Id. In construing these statutes, all laws on the same subject matter should be construed together so as to produce a harmonious system. Duplantis, supra. The presumption is that a new law relating to such subject matter was enacted with reference to the former general law. Id. When possible, it is the duty of the court to adopt a construction of the provision that harmonizes and reconciles it with other provisions. Duplantis, supra; Breaux, supra.
In Principal Mut. Life Ins. Co. v. Progressive United Corp., 28,378 (La.App.2d Cir.5/8/96), 674 So.2d 1073, 1077, writ denied, 96-1474 (La.9/20/96), 679 So.2d 436, this court "[made] no attempt to interpret or to reconcile the provisions of §§ 1212 and 1205(B)." However, in Chailland Business Consultants v. Duplantis, supra, the court acknowledged that "there is a conflict between the provisions of LSA-R.S. 23:1212 and LSA-R.S. 23:1205(B)." In that case, the claimant's health insurance carrier intervened, seeking reimbursement for the payment of the claimant's health insurance claims. The court concluded that the health insurance carrier had the right to be reimbursed for the payments it made, stating:
[The health insurance carrier], the intervenor, squarely fits into both LSA-R.S. 23:1212 and LSA-R.S. 23:1205 when it paid health insurance claims for [the claimant].
The legislative history indicates that in 1989, LSA-R.S. 23:1212 was enacted to prevent the employee from receiving a windfall when his health insurance carrier and workers' compensation carrier paid the same medical expenses. This law became effective Jan. 1, 1990 and is commonly referred to as the "medical expense offset" provision. This created confusion because some employers delayed authorizing their workers' compensation carrier to pay their injured employee's medical expenses, thereby forcing the employee's personal health insurance care provider to foot the bill. To remedy this situation, in 1995, with *1259 H.B. 2326, the legislature amended LSA-R.S. 23:1205, granting a right of reimbursement to the health care provider against the workers' compensation insurer.
* * *
Here, the specific provisions of LSA-R.S. 23:1205(B) clearly state "any company" which contracts for health care benefits "shall" have a right to reimbursement. . . . LSA-R.S. 23:1205 was enacted five years after LSA-R.S. 23:1212 was enacted. LSA-R.S. 23:1205(B) specifically addresses the health insurance carrier's right to reimbursement. Therefore, we conclude the legislature provided a specific exception under LSA-R.S. 23:1205(B) to the general rule under LSA-R.S. 23:1212.
Duplantis, 897 So.2d at 126-27. We agree with the First Circuit's conclusion and its reasoning. LSA-R.S. 23:1205(B) is specifically directed to Blue Cross' intervention in the instant matter. There is no language in that provision which limits a health insurance carrier's reimbursement. For that reason, we reverse the WCJ's determination that Blue Cross' recovery should be reduced by 75%. Pursuant to LSA-R.S. 23:1205(B), we conclude that LUBA and ESIF are solidarily liable to Blue Cross for the reimbursement of medical expenses paid in the amount of $188,307.18.

CONCLUSION
For the foregoing reasons, we conclude that the OWC has subject matter jurisdiction over the workers' compensation coverage dispute herein. We affirm the WCJ's determination that claimant was covered individually under the ESIF workers' compensation policy. We conclude that ESIF and LUBA are solidarily liable to claimant for workers' compensation benefits. We affirm the WCJ's denial of the claimant's request for the lump sum payment pursuant to LSA-R.S. 23:1221(4)(s). We reverse the WCJ's determination that LUBA alone is liable for penalties and attorney's fees. We conclude that LUBA and ESIF are solidarily liable for separate penalties for each violation of the Workers' Compensation Act, totaling $14,000. We further find that LUBA and ESIF are solidarily liable for $21,210.47 in attorney fees incurred in the OWC proceedings, and we award attorney's fees of $3,000 for work done on appeal.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] On joint motion of the parties, the claims were consolidated.
[2] This court denied ESIF's application for supervisory writs on the issue of coverage. Ryan v. Ryan Construction Co., Inc., 39,354 (La.App. 2d Cir.8/26/04) (unpublished). ESIF then filed a suspensive appeal which was dismissed by this court. Ryan v. Blount Bros. Construction, Inc., 36,640 (La.App. 2d Cir.12/9/04) (unpublished).
[3] The issue of subject matter jurisdiction may be raised at any stage in the proceedings, including by the court on its own motion. Boudreaux v. State, Dept. of Transp. and Dev., 01-1329 (La.2/26/02), 815 So.2d 7; Northeast Realty v. Jackson, 36,276 (La.App. 2d Cir.8/14/02), 824 So.2d 1264.
[4] Claimant contends in brief that ESIF also filed an exception to subject matter jurisdiction in the pending district court proceedings, arguing that the district court lacked subject matter jurisdiction, and the OWC is the proper tribunal to hear the coverage dispute. The district court sustained the exception, ruling that it lacked subject matter jurisdiction to resolve coverage disputes under the Workers' Compensation Act.
[5] The record revealed that Frazier solicited automobile and fire insurance for Gibson Insurance. Prospective policyholders solicited by Frazier would receive a copy of the policy from Gibson Insurance, along with a letter stating that they would receive the original policy as soon as Gibson Insurance received the premium. A 30-day grace period was allowed during which the prospective policyholders were covered. If the premium was not received within 30 days, the policy would be canceled.
[6] LSA-R.S. 23:1101(B) provides in pertinent part:

Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit in district court against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents.
* * *